OPINION OF THE COURT
Ernst H. Rosenberger, J.
Donald Ebbecke and James Rice are charged separately in the above-numbered indictments with several counts of perjury. It is charged that the defendants, while members of the New York City Police Department, swore falsely during certain Grand Jury proceedings and at a subsequent trial with respect to the arrests in 1972 of Michael Riga and Michael Riga, Jr. (the Riga matter).
The perjury counts in the instant indictments replace counts contained in the original indictment,, SPO N104/76, which charged the defendants with the same offenses. The predecessor perjury counts in the original indictment were dismissed as defectively pleaded by Justice Sandler on Octo *3 ber 4, 1977, with leave to re-present the charges to another Grand Jury.
The remaining counts of the original indictment, in addition to charging defendants with conspiracy in connection with the Riga arrests, charge defendants with crimes relating to two other matters. Counts 1 and 2 of the original indictment charge defendants with conspiracy and bribe receiving in connection with the arrest in March, 1972, of one Max August (the August matter). Counts 10 and 11 of the original indictment charge defendants with conspiracy and grand larceny by extortion in October, 1972, involving one Michael Russek (the Russek matter).
This case had its origin in an investigation of the Safe, Loft and Truck Squad of the New York City Police Department, which began in 1973 and continued through 1974. Early in 1975 the original Grand Jury presentation began. On December 11, 1975, the original indictment was voted against the defendants. However, it was not until July 13, 1976, some seven months later, that the indictment was filed with the court.
Defendants have moved to dismiss the instant indictments on due process grounds, based upon the delay between the alleged crimes and the filing of the original indictment, and pursuant to CPL 30.30, based upon the seven-month period between the voting of the original indictment and its filing.*
On the motion under CPL 30.30, defendants urge that because there is no authorization in the CPL for a prosecutor to refuse to cause an indictment to be filed after it has been voted by a Grand Jury, the criminal action against the defendants should be deemed to have commenced with the vote of the Grand Jury to indict on December 11, 1975, rather than with the filing of the indictment on July 13, 1976. As the period in question was greater than six months, such a construction would require a dismissal of the indictment. This argument must be rejected, however.
First, CPL 30.30 specifically provides that the applicable time periods after which dismissal is required begin with the commencement of the criminal action. (CPL 30.30, subd 1, *4 pars [a]-[d].) The "commencement of a criminal action” is, in turn, a statutorily defined term. "A criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court” (CPL 1.20, subd 17; emphasis added). To accede to defendants’ argument, this court would be required to construe this term in a manner at odds with the definition with which it was invested by the Legislature.
This should not be taken as a suggestion that a prosecutor may delay the filing of an indictment for the purpose of gaining a tactical advantage over a defendant. Such a procedure, if established, would require a court to take curative action.
In support of this branch of the motion, defendants cite People v De Lio (75 Misc 2d 711) and Mooney v Cahn (79 Misc 2d 703). In those cases, Grand Juries failed to take action with regard to specific charges before them, but no dismissals were filed. The prosecutors claimed that the fact that dismissals were not filed permitted them to re-present the charges without court permission (in the De Lio case), and to continue a pending prosecution in the lower court (in the Mooney case). It was held in both cases that the failure to file dismissals could not be used to the detriment of defendants. Those cases, however, dealt with dismissals, not indictments. In addition, the time element was not crucial to those decisions.
De Lio held that the "subterfuge” of failing to file a dismissal could not frustrate the "salutary effect” of the statute requiring judicial approval of resubmission of charges to a Grand Jury. It cannot be said that the effect or purpose of CPL 30.30, i.e., a speedy trial measured from the commencement of an action, requires earlier commencement of the action. The primary reasons underlying the requirement of a speedy trial are the prevention of extended incarceration and relief from the anxiety and public suspicion attendant to criminal charges. (People v Singer, 44 NY2d 241.) These considerations do not become relevant until a defendant has been arrested or formally accused. (Id.)
Also, it must be noted that preindictment delay such as that involved here which is prejudicial or potentially prejudicial to a defendant is not without a remedy. (See, generally, People v Singer, supra, pp 253-254.)
Defendants also assert that once the Grand Jury voted to indict, the proper procedure would have been to file the indictment and "have it sealed” pursuant to CPL 210.10 (subd
*5 3). If this had been done, it is argued, an unjustifiable delay of seven months would have required dismissal. In support of this argument defendants cite People v Washington (43 NY2d 772). In Washington, a seven-month delay between indictment and arrest was held to be violative of the defendant’s statutory rights under CPL 30.30. Although the People had argued that the delay in that case was the result of an ongoing narcotics investigation and therefore excludable from the statutory period as an "exceptional circumstance” under CPL
30.30 (subd 4, par [g]), the court held (pp 773-774) that the proof as to the investigation was deficient in that "[n]o activity of any significance was shown but only a variety of unsatisfactory excuses why the investigation did not proceed.” The court noted that examples of exceptional circumstances would include the probable availability of new evidence within a reasonable period of time and a justified need for additional time to prepare the People’s case. People v Washington is distinguishable from the instant case in that in Washington the indictment had been filed with the court prior to the seven-month period in question.
Defendants argue that the proper procedure here would have been to file the indictment and "have it sealed”; CPL 210.10 (subd 3) provides only that an indictment must be sealed until a defendant who has not previously been held by a local criminal court for the action of the Grand Jury is produced or appears for arraignment. It does not appear that there would have been authority for the sealing of the indictment for a period beyond that which would have been required for the appearance of the defendants for arraignment.
Accordingly, defendants’ motion to dismiss pursuant to CPL
30.30 based upon the delay between the voting of the original indictment and its filing is denied.
As to defendants’ motion for dismissal on due process grounds, a hearing was conducted by this court on the issue of delay between the alleged commission of the crimes in question and the filing of the indictment.
A former Assistant Special Prosecutor who was involved in the investigation and original Grand Jury presentation testified that a general investigation of the Safe, Loft and Truck Squad began in October or November of 1974, and that in the course of the investigation, the office of the Special Prosecutor subpoenaed the records of every arrest made by that squad for a three-year period. He testified that the original allegation *6 with respect to the Russek matter was received by the office of the Special Prosecutor in October, 1973, that allegations as to the Max August matter were received from an informant in April, 1974, and that the office of the Special Prosecutor became aware of the Riga matter no later than October, 1974. The presentation of evidence to the original Grand Jury began in January of 1975. After hearing evidence with respect to the defendants for almost a year, the Grand Jury voted to indict them on December 11, 1975.
The former prosecutor testified further that. he requested the Grand Jury to vote with respect to the charges against the defendants in December, 1975, because he was experiencing difficulty attaining a quorum of the grand jurors and wished to avoid having to re-present the evidence with respect to the defendants to another Grand Jury. He testified that the Special Prosecutor’s general investigation of the Safe, Loft and Truck Squad continued past December 11, 1975, and, in addition, that his office received new allegations from an informant, in January or February of 1976, of serious criminal activity by certain unnamed members with the Safe, Loft and Truck Squad, as a result of which the defendants came under suspicion, and that it was not until one or two months after these new allegations were received that the defendants were eliminated as suspects. In sum, the reason assigned by the former Assistant Special Prosecutor for the delay in filing the indictment against defendants was that the entire Safe, Loft and Truck Squad, as well as the defendants, remained under investigation.
The former prosecutor testified that it was his belief that the Grand Jury which originally indicted the defendants did not continue to sit as an active Grand Jury after December 11,1975. He testified that no evidence concerning the defendants was presented to any Grand Jury from December 11, 1975 to July 13, 1976. However, the former prosecutor testified that he presented evidence with respect to other members of the Safe, Loft and Truck Squad to another Grand Jury after December, 1975.
The former prosecutor conceded that the defendants were aware of the fact that they were under investigation at least as early as June, 1975, as a result of departmental charges having been brought against them arising from the same transactions which were the subject of the indictments. He testified that Ebbecke was tried on these departmental *7 charges in June, 1975, and that each of the witnesses who testified at that trial had previously testified before the Grand Jury that indicted the defendants. The departmental charges on which Ebbecke was tried related to the August matter and the Riga matter and were substantially the same as the charges in the indictment which relate to those matters. The former prosecutor was present at portions of Ebbecke’s departmental trial.
Where there has been a "protracted [preindictment] delay, certainly over a period of years, the burden is on the prosecution to establish good cause” (People v Singer, 44 NY2d 241, 254, supra). The crimes charged here are alleged to have occurred in 1972. The first allegation with respect to any of the three matters which are the subject of the indictment was received by the office of the Special Prosecutor in October, 1973. The initial information with respect to the August matter was received in April, 1974. The over-all investigation of the Safe, Loft and Truck Squad began in October, 1974. The Grand Jury investigation began in January, 1975, and continued to December, 1975, when the original indictment was voted. The delay to this point seems justifiable, especially in light of the scope of the investigation, which encompassed the entire Safe, Loft and Truck Squad.
It was held in People v Singer (supra, p 254) that: "There is, of course, a need to investigate to discover the offender; to eliminate unfounded charges and to gather sufficient evidence to bring the case, or related cases, to court. Thus a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense”.
The period from the vote on December 11, 1975 to the filing of the indictment on July 31, 1976 is not conceptually differ-, ent from the preceding period of the Grand Jury investigation in light of the reason ascribed to the decision to request a vote on December 11, 1975, namely, that the Assistant Special Prosecutor in charge of the case feared the imminent loss of a quorum of the Grand Jury. According to the evidence adduced at the hearing, investigative activity continued as to the Safe, Loft and Truck Squad after December 11, 1975, and evidence was presented to another Grand Jury with respect to the squad.
In addition, the investigation prompted by "new allega *8 tions” of criminal activity within the Safe, Loft and Truck Squad, possibly involving the defendants, which allegation was received by the office of the Special Prosecutor after December, 1975, appears to have been a good faith investigation of a related case which would justify some delay in proceeding with respect to the charges which had already been voted.
Significantly, it does not appear that the postvote delay was motivated by a desire to gain tactical advantage over the defendants. Defendants speculate that a purpose of this delay was to pressure the defendants or one of them into co-operating with the prosecutors. However, this was not established at the hearing.
Applying the balancing analysis required where there is a claim of preindictment delay (People v Staley, 41 NY2d 789, 792), the court finds that the delay involved here was not unreasonable from a constitutional standpoint. The other arguments urged by the defendants have been considered and rejected. Defendants’ motion to dismiss the indictment for preindictment delay is, therefore, denied.

 It is noted that the instant motions are directed only toward the perjury counts. It appears, however, that the result reached with respect to those counts would apply equally to the remaining counts of the original indictment, certainly as to the issue of delay between the vote and the filing of the indictment, as the dates of the voting and filing of the original indictment are the controlling dates as to the perjury counts.